In the Matter of Objections to the Certificate of Nomination
of BEN L. FAIRCHILD for Representative in Congress for
the Sixteenth Congressional District.

BEN L. FAIRCHILD, Appellant; WILLIAM L. WARD,
Respondent.

1. ELECTION LAW — REVIEW OF DETERMINATION ON CONTESTED CER-
TIFICATE OF NOMINATION — LOCUS OF JURISDICTION.  The judicial dis-
trict or the county, within which a justice of the Supreme Court or a
county judge can entertain jurisdiction of a proceeding under the Elec-
tion Law (L. 1896, ch. 909, § 56) to review the determination of a filing
officer upon a contested certificate of nomination, is the district or county
within which the complainant and respondent reside, and where the trans-
action arose which was the subject of the determination.
2. FORCE OF DECISION OF PARTY AUTHORITIES.  Where questions of
procedure in political conventions, or the regularity of committees, are
involved, which are not regulated by law, but by party usages and cus-
toms, the officer called upon to determine such questions should follow
the decision of the regularly constituted authorities of the party, and
courts, in reviewing the determination of such officers, should in no way
interfere with such determination.
3. REGULARITY OF ASSEMBLY DISTRICT CONVENTION.  Where, on a
dispute arising among the delegates to a regularly called assembly district
party convention, two separate conventions are organized, and the state
committee and state convention of the party decide that one of them was
regular, such decision is to be regarded as controlling upon public officers
and the courts.
4. APPOINTMENT OF CONGRESSIONAL DISTRICT COMMITTEE.  A con-
gressional district convention, called for the sole purpose of electing
delegates to a national convention, has no authority to withdraw power
theretofore regularly conferred upon a congressional committee and
appoint a new committee.
5. PAPERS ON REVIEW.  The hearing, on a proceeding under the Elec-
tion Law to review the determination of a filing officer upon a contested
certificate of nomination, must be confined to the papers upon which the
original determination was based.
*In the Matter of Fairchild,* 9 App. Div. 624, reversed.

(Argued December 14, 1896; decided January 19, 1897.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered Octo-
ber 29, 1896, affirming an order made by Honorable SAMUEL

EDWARDS, a justice of the Supreme Court in and for the third judicial district, which reversed a determination of the secretary of state that Ben L. Fairchild was the regular Republican candidate for representative in Congress for the sixteenth congressional district, decided that William L. Ward was the regular Republican candidate, and directed that his name be placed upon the official ballot as such.

The facts, so far as material, are stated in the opinion.

*Benjamin F. Tracy* for appellant. Although the election has been held, this court should now hear this appeal and decide the questions raised thereby. (*In re Emmet*, 150 N. Y. 538; *Hobart* v. *Hobart*, 86 N. Y. 636; *N. P. Bank* v. *Goddard*, 48 N. Y. S. R. 743–744; Code Civ. Pro. § 1294.) The record before Justice EDWARDS did not justify his order declaring Ward to be the regular Republican nominee. (L. 1896, ch. 909, § 56; *Wuesthoff* v. *G. L. Ins. Co.*, 107 N. Y. 580; *People ex rel.* v. *Matsell*, 94 N. Y. 179; *People* v. *McGloin*, 91 N. Y. 250; *In re Klinker*, 31 N. Y. Supp. 469; *People ex rel.* v. *Police Comrs.*, 10 Misc. Rep. 200.) It was error to exclude the affidavits offered in evidence on behalf of Mr. Fairchild: (L. 1896, ch. 909, § 56.) The supreme authority of the Republican party has established the regularity of the Fairchild delegates from the second Westchester district. (*In re Redmond*, 5 Misc. Rep. 369; *In re Pollard*, 55 N. Y. S. R. 155.) The five Fairchild delegates from the second Westchester district were regularly elected. (L. 1892, ch. 677, § 19.)

*John Cadman, Henry C. Henderson* and *J. Rider Cady* for respondent. The facts which were considered and passed upon by the justice and the court below are not subject to review by this court upon this appeal. (Const. of N. Y. art. 6, § 9; Code Civ. Pro. § 191.) The justice in the third judicial district had jurisdiction. (L. 1896, ch. 909, § 58; L. 1892, ch. 680, § 65; L. 1895, ch. 810, § 56.) The justice did not err in excluding the affidavits offered in addition to those filed

with, and acted upon by, the secretary of state. (L. 1896, ch. 909, §§ 56, 66; 21 Am. & Eng. Ency. of Law, 349; Code Civ. Pro. §§ 191, 1301.)

MARTIN, J. The respondent contends that inasmuch as the election has been held, the decision of the questions presented on this appeal is of no importance, as it can, at most, only affect the question of costs. We think the questions involved are of sufficient importance to require their determination by this court, as it may prevent future embarrassment in the congressional district to which this controversy relates, and also settle other questions upon which there is a conflict in the decisions of the Supreme Court. (*Matter of Madden*, 148 N. Y. 136, 139.)

In examining the various questions to be reviewed, we deem it neither necessary nor desirable to make any very complete or detailed statement of the circumstances and transactions out of which this controversy arose. Consequently, we shall state only such matters and facts as are necessary to an understanding and decision of the questions to be decided.

The first inquiry relates to the jurisdiction of the courts below. A summary proceeding under the provisions of the Election Law was instituted to review the determination of the secretary of state to the effect that the appellant was regularly nominated as the candidate of the Republican party for the office of congressman in the sixteenth congressional district, and his name entitled to be placed upon the Republican ticket as such nominee. The sixteenth congressional district is within the bounds of the second judicial district, and also of the second judicial department. Both the complainant and the respondent were residents of that district and department. The office and residence of the secretary of state are in the city of Albany, which is in the third judicial district. The proceeding under review was instituted and prosecuted before a justice of the Supreme Court for the third judicial district, and the review of his determination was by the Appellate Division of the third department.

46

The statute authorizing this proceeding provides: "Any questions arising with reference to any device, or to the political party or other name designated in any certificate of nomination filed pursuant to the provisions of this section, or of section fifty-seven of this article, or with reference to the construction, validity or legality of any such certificate, shall be determined in the first instance by the officer with whom such certificate of nomination is filed. Such decision shall be in writing, and a copy thereof shall be sent forthwith by mail by such officer to the committee, if any, named upon the face of such certificate, and also to each candidate nominated by any certificate of nomination affected by such decision. The Supreme Court, or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction, upon complaint of any citizen, to review the determination and acts of such officer, and to make such order in the premises as justice may require, but such order must be made on or before the last day fixed for filing certificates of nominations to fill vacancies with such officer as provided in subdivision one of section sixty-six of this article. Such a complaint shall be heard upon such notice to such officer as the said court or justice, or judge thereof, shall direct." (L. 1896, ch. 909, § 56.)

The language of this statute is uncertain, and presents the question, within what judicial district, or within what county, can a justice of the Supreme Court or a county judge entertain jurisdiction of such a proceeding. Is it the county or district in which the officer making the determination resides or his office is located, or in the county or district where the complainant resides and in which the district is located for which the nomination is made? If the former, then, in every case where the nomination was made for a district which includes more than one county, all such proceedings would have to be instituted in the third judicial district before the Supreme Court or a justice thereof or before the county judge of Albany county. Is it at all probable that such was the intent of this provision? I think not. I think

it is not to be supposed that the legislature intended to impose upon the justices of the Supreme Court in the third judicial district and the judge of the county of Albany the entire burden of this class of litigation to the exclusion of all other judicial officers of the state. Nor do I think it intended to compel complainants and other persons interested to come into the third judicial district to conduct and defend proceedings of this character in all cases where the determination was made by the secretary of state. Such a construction would require a review of these proceedings in that district in every case where the office for which the nomination was made was to be filled by the electors of the state or any division or district greater than a county. So that contests in cases of most of the congressmen, justices of the Supreme Court, state senators, and, perhaps, other offices, would have to be determined in the third judicial district, thus requiring the parties interested to travel long distances to institute or conduct and defend such proceedings, and would be quite liable to result in a denial of justice by reason of the inability of the judicial officers of that district to hear and determine the number of proceedings that might be instituted within the time they are required to be heard and determined.

But it is said that it could not have been the intention to compel the secretary to travel over the entire state to attend these proceedings, and that there might be two or more on the same day, so that it would be impossible for him to attend them all, and hence, it is improbable that such was its purpose. The force of this contention is more apparent than real. It is obvious to a person understanding the character of these contests, and the manner in which they are usually conducted, that they are rarely, if ever, defended by the officer making the determination sought to be reviewed. Usually, the only parties interested, or who attend, are the contestants, respondents and people residing in the immediate locality where the nomination was made. If the intention of the statute was to confine these proceedings to the district or county where the officer resided who made the determination,

it is exceptional. We find no other statute requiring the acts of a judicial officer to be reviewed in the immediate locality where he resides, when the transaction out of which the litigation arose occurred elsewhere, and the parties interested are not residents. I cannot think such was the purpose of this statute. I am of the opinion that the district and county referred to in the statute are those within which the complainants and respondent reside and where the transaction arose which was the subject of the determination.

Thus I am led to the conclusion that Mr. Justice EDWARDS had no jurisdiction to hear and determine the proceeding before him; that he erred in not dismissing it on the appellant's motion, and that the learned Appellate Division erred in affirming his determination.

While the conclusion we have reached upon the question of jurisdiction requires a reversal, and a consideration of the other questions presented is unnecessary to a determination of this particular controversy, yet, to prevent other complications that may arise out of the existing state of affairs and to prevent embarrassment in the future administration of the law, we deem it best to consider some of the other questions presented to the end that they may be settled by this court for future guidance in the execution of this statute.

The regularity and validity of the nomination of the appellant seem to depend upon two propositions: One is whether a majority of the delegates elected in the sixteenth congressional district, who, it is claimed, were favorable to the nomination of the appellant, were properly elected or, under the circumstances proved, must be held to have been so elected; and, if so, the other is whether they were properly convened for the purpose of making such nomination, so that their action was regular and binding.

As to the first, we are presented at the outset with the question how far the action of the state and judicial conventions is controlling in determining whether the delegates who participated in the Fairchild congressional convention were properly elected. Section fifty-six of the Election Law pro-

vides that if there is a division within a party, and two or more factions claim the same device or name, the secretary of state, in a case like this, shall decide such conflicting claim, "giving preference of device and name to the convention or primary, or committee thereof, recognized by the regularly constituted party authorities."

That the state committee and state convention of a party are its regularly constituted authorities there can be no doubt. In this case, whether a majority of the delegates in the congressional district favored the nomination of Fairchild depends solely upon the regularity of the election of five delegates elected in the second assembly district of Westchester county. In that district an assembly district convention was regularly called. Before its organization, however, a dispute arose between the delegates, and two separate conventions were organized, each of which elected delegates to the state convention, delegates to the judicial convention, and delegates to the congressional convention for the sixteenth district. When the state convention assembled, the delegates · elected by each of these two conventions appeared before the state committee and the state convention, and claimed seats in the latter. The contest arising out of this situation was first brought to a hearing before the state committee, which, after considering the matter, decided that the assembly convention which elected delegates who were favorable to Fairchild's nomination was the regular and properly organized district convention, and that the delegates elected by it were the duly and properly elected delegates. This contest was then brought to a hearing before the convention, where the matter was again investigated and considered, and the convention reached the same conclusion.

Subsequently, the question of the regularity of the assembly district convention for that assembly district arose in the judicial convention held for the judicial district which included that assembly district. The question was again contested, and the judicial convention reached the same conclusion as that reached by the state convention. Thus, the state committee,

the state convention and the judicial convention all decided that the assembly convention in that district which elected the five delegates favorable to and who voted for the nomination of Fairchild was the regular and properly authorized assembly convention for that district, thus, in effect, determining that they were the proper and regular delegates therefrom. That was the only question in dispute relating to the delegates elected ; that, if that convention was regular, it had the same authority to elect congressional delegates as it had to elect state or judicial delegates, is not disputed. The only question in either case was, which of the two conventions was regular. That question, as we have already seen, was decided in favor of the Fairchild convention.

The effect of the statute and how far its provisions are binding upon officers determining these questions and upon courts or judges in reviewing the determinations of such officers, is a subject upon which the Supreme Court has rendered variant and conflicting decisions — one class holding that the determination of party conventions or party authorities has no weight whatever, while the other class is to the effect that in determining questions as to the regularity of conventions, officers and courts should rely upon the action and determination of the regularly constituted party authorities upon the question where there has been such a determination. We think the latter effectuates the obvious intent and purpose of the statute. It is much more proper that questions which relate to the regularity of conventions, to the nomination of candidates, and the constitution of committees should be determined by the regularly constituted party authorities, than to have every question relating to a caucus, convention or nomination determined by the courts, and thus, in effect, compel them to make party nominations and regulate the details of party procedure instead of having them controlled by party authorities. We think that in cases where questions of procedure in conventions, or the regularity of committees are involved, which are not regulated by law, but by party usages and customs, the officer called upon to determine such questions should follow

the decision of the regularly constituted authorities of the party, and courts in reviewing the determination of such officers should in no way interfere with such determination. We think an opposite rule would be in conflict with the spirit and intent of the statute, burden the courts with a class of litigation that would be unfortunate and embarrassing, and might produce results entirely at variance with the will of a majority of the electors of the party.

We are, therefore, of the opinion that the action of the state committee and state convention should be regarded as controlling, and that the courts below were not justified in holding that Ward was properly nominated, as it is manifest, if the action of the state convention is to control, a majority of the properly elected congressional delegates of the sixteenth district voted for the nomination of Fairchild.

But another question is raised, which is whether the convention at which Fairchild was nominated was properly called. There were two committees, each of which claimed to be the proper one. The committee calling the convention at which Fairchild was nominated was elected at the regular congressional convention, held in 1894, when Fairchild was first nominated as congressman for that district. In the spring of 1896 it called a convention for the sole purpose of electing delegates to the national convention at St. Louis. That was the only purpose of the convention, and the sole object mentioned in the call issued by the committee. The convention, however, when it met, attempted to appoint a new congressional committee. Whether it had the authority to do so is another of the questions involved. I think it had not. The electors of the district who were members of the Republican party elected delegates to that convention for a single purpose only. They conferred upon the delegates thus elected the power to perform for them one single act. The whole governmental power and authority of a party rest in its members, in the same manner that all governmental power of the state rests in the people until delegated to its representatives. Delegates can represent the members of a party only to the extent of the author-

ity actually conferred by the latter. In 1894 the members of the party in that district had elected a congressional committee and invested it with power to call the next congressional convention, in 1896. It was that committee which called the Fairchild convention. The power that had been conferred upon it could not be withdrawn and a new committee appointed without the consent of the electors of the party, acting through its delegates elected for that purpose. It would not, I apprehend, be seriously contended, if that convention had assumed to nominate a congressman, that its action would have been regular or valid. If such a nomination would have been irregular and invalid how can it be said that its action was any more regular in attempting to appoint a committee when no such power had been delegated to it? If invalid in one case I think it is equally so in the other. The act would be unauthorized in both, and not binding in either.

We think the learned judge before whom this proceeding was instituted correctly held that on the hearing before him the parties should be confined to the papers used before the secretary of state whose determination he was called upon to review. The proceeding before him was clearly one of review, was in no sense original, and could be properly heard only upon the papers upon which the original determination was based.

The order of the Appellate Division and the order made by Honorable SAMUEL EDWARDS should be reversed, and the determination of the secretary of state affirmed, with costs in all the courts.

All concur, except O'BRIEN, J., not voting.

Ordered accordingly.