IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NADINE FROST, SEAN GOWARD,  :
and WILLIAM MCVAY,           :
                             :
                             :    C.A. No. K18M-04-003 NEP
            Petitioners,     :
                             :
                             :    In and for Kent County
      v.                     :
                             :
                             :
ELAINE MANLOVE,              :
Commissioner of Elections,   :
                             :
                             :
            Respondent.      :

## OPINION AND ORDER

Submitted:  August 3, 2018
Decided:  August 14, 2018

Before the Court are Respondent Elaine Manlove's (hereinafter "Respondent") motion to dismiss and Petitioners Nadine Frost's, William McVay's, and Sean Goward's motion for summary judgment (hereinafter "Petitioners"), as well as their written responses and oral arguments presented by all parties at a hearing held August 3, 2018. For the reasons stated below, Respondent's motion to dismiss is **GRANTED**, and consequently, Petitioners' motion for summary judgment is **DISMISSED** as moot.

## I.    FACTUAL BACKGROUND

This matter was initiated by Petitioners' filing of their *pro se* complaint on April 6, 2018, in which Petitioners sought a writ of mandamus to compel Respondent to recognize Petitioner Nadine Frost's (hereinafter "Ms. Frost") candidacy for the

United States Senate, and the Libertarian Party of Delaware's (hereinafter "LPD") status as the "regularly organized and constituted governing authority for the Libertarian Party" in Delaware. The facts recited below are as alleged in Petitioners' amended complaint.[1]

Petitioners allege that Ms. Frost is the duly nominated candidate of the LPD for the United States Senate, and that her fellow petitioners, William McVay and Sean Goward, are the duly elected State Chair and State Secretary of the LPD. On February 12, 2018, Petitioners sought written acknowledgment from the State Board of Elections of the LPD's status as the official political party bearing the Libertarian title in Delaware. Petitioners received no response from the State Board of Elections or from Respondent.

On March 28, 2018, Ms. Frost delivered a completed certificate of nomination concerning her candidacy for the United States Senate to Respondent. Despite this, Respondent failed to list Ms. Frost on a website maintained by Respondent that lists the other various ballot-qualified candidates up for election in 2018. On April 6, 2018, Petitioners filed this complaint, alleging that they are suffering harm for every moment Ms. Frost is not listed on Respondent's website. Petitioners sought a writ of mandamus to compel Respondent to recognize Ms. Frost's candidacy in writing, and on the website, and to acknowledge the LPD as the regularly organized and constituted governing authority for the Libertarian Party in Delaware.

---

[1] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (on a motion to dismiss "all well-pleaded factual allegations are accepted as true.").

Respondent's motion to dismiss argues that Petitioners have failed to plead facts demonstrating entitlement to a writ of mandamus. Specifically, Respondents argue that (1) Petitioners have failed to plead facts indicating a "clear right" to a written recognition by Respondent of the LPD's status as the regularly organized and constituted governing authority for the Libertarian Party in Delaware; (2) Petitioners have an adequate remedy at law, namely, the relief offered by 15 *Del. C.* § 3302(b), which determines to which faction the name, title or figure of a political party properly belongs; and (3) Petitioners William McVay and Sean Goward lack standing.

Petitioners respond that the clear right to a written recognition of Ms. Frost's candidacy and the LPD's status is provided by 15 *Del. C.* § 8041(2). They further assert that the alternative remedy offered by 3302(b) is "irrelevant," and that Petitioners William McVay and Sean Goward have standing because any citizen or taxpayer can bring a mandamus proceeding regardless of that individual's lack of a special interest in the result of the proceedings.

## II.     RELEVANT LAW

Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate

3

unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[2]

A writ of mandamus is an extraordinary remedy that a Court may issue to compel an agency to perform a nondiscretionary duty. Before a writ shall issue, the petitioner must demonstrate that (1) he or she has "a clear right to the performance of the duty;" and (2) he or she has no adequate remedy at law; and (3) the agency has "arbitrarily failed or refused to perform that duty."[3]

Chapter 80 of Title 15 of the Delaware Code contains various provisions relating to funds used in Delaware political campaigns. 15 *Del. C.* § 8041(2) requires that commissioners, "[a]t the request of any person, make a ruling that applies this chapter to a set of facts specified by the person."

In contrast, Chapter 33 of Title 15 concerns the nominations of particular candidates made by political parties, and Section 3302 provides a mechanism by which the Board of Elections may resolve contests between factions claiming to represent a political party. Specifically, Section 3302(b) provides, in pertinent part, as follows:

> In case of a division in any party and claim by 2 or more factions to the same party name or title, figure or device, if the division occurs at a state convention or extends throughout this State, the State Board of Elections shall, within 10 days after any one of them has received the certificates of the contending factions, assemble in Dover, and determine to which faction the name, title or figure properly belongs,

---

[2] *Savor,* 812 A.2d at 896–97.
[3] *Clough v. State,* 686 A.2d 158, 159 (Del. 1996); *In re Hyson,* 649 A.2d 807, 808 (Del. 1994).

giving the preference to the convention held at the time and place designated in the call of the regularly constituted party authorities; if, within 5 days after, the other faction presents no other party name or title, figure or device and certifies the same to the Board, the latter shall again immediately assemble and select some suitable title, figure or device for such faction and the name shall be placed above the list of its candidates on the ballots.

## III. DISCUSSION

Here, the Court finds that 15 *Del. C.* § 8041(2) does not clearly entitle Petitioners to the relief requested. Chapter 80 pertains only to funds used for political campaigns: according to 15 *Del. C.* § 8001, the purpose of Chapter 80 "is to protect the public interest by requiring full disclosure of the source of all funds used in political campaigns, providing reasonable limits on the amounts of contributions and providing a manner to enforce this law." While Petitioners claim that the answer to the question of whether the LPD is the "regularly organized and constituted governing authority for the ballot qualified Libertarian Party in Delaware" might have campaign finance implications, such implications are not mentioned in the amended complaint.

Additionally, the Court finds that Petitioners are not entitled to have the LPD recognized as the "regularly organized and constituted governing authority for the ballot qualified Libertarian Party in Delaware," because such a designation would necessarily be inaccurate. In the context of Title 15, "regularly organized and constituted governing authority" refers to a state political party's state committee or

state convention.[4] For example, in this case, the facts as pleaded in the amended complaint would suggest that the LPD is not itself a regularly constituted party authority—the regularly constituted authorities of the LPD are its executive committee and convention. Therefore, the Court finds that Respondent's duty to provide the written statement requested is at least questionable, if such a duty exists at all.[5] Further, Petitioners failed to present authority demonstrating that Respondent has any duty to list Ms. Frost as a candidate on the website mentioned. This ground independently mandates dismissal of the petition. As the Respondent had no duty to

---

[4] 15 *Del. C.* § 101(26) defines a "State committee" as a "regularly organized and constituted statewide governing authority of a political party in this State." This is not to be confused with a political party, which is defined under 101(15) as "any political organization which elects a state committee and officers of a state committee . . . ."). Further, the Court finds instructive the interpretation of the New York Court of Appeals of a New York state election law with nearly identical wording. That law provided that "if there is a division within a party, and two or more factions claim the same device or name, the secretary of state, in a case like this, shall decide such conflicting claim, 'giving preference of device and name to the convention or primary, or committee thereof, recognized by the regularly constituted party authorities.'" *In re Fairchild*, 151 N.Y. 359, 365, 45 N.E. 943, 945 (1897). In interpreting that law, the New York Court of Appeals concluded as follows: "That the state committee and state convention of a party are its regularly constituted authorities there can be no doubt." A similar conclusion was reached by the Supreme Court of Indiana, again interpreting a nearly identical statute: "There can be no question under the facts pleaded that the Republican county central committee of which relator is the chairman was the regularly constituted authority for the calling of a convention of the Republican Party in Marshall county [sic]." *State ex rel. Garn v. Bd. of Election Comm'rs of Marshall Cty.*, 167 Ind. 276, 78 N.E. 1016, 1018 (1906).

[5] The Court also notes that 15 *Del. C.* § 8041(2) does not require the Commissioner to make certain written statements, only to make rulings on certain sets of facts. Therefore, even if the question presented to Respondent was a proper one, Petitioners did not demonstrate that Respondent was obligated to rule in their favor, simply that she must make a ruling—be it for or against them. The amended complaint does allege that the LPD "is the regularly organized and constituted governing authority" of the party, implying that the requested statement from Respondent would be truthful; however, this allegation is conclusory and unsupported by any facts. Because the amended complaint contains no facts or argument showing that Respondent had a duty to rule in their favor, Petitioners have not set forth sufficient allegations showing entitlement to the requested relief.

6

perform the requested acts, the Court finds that Respondent has not "arbitrarily failed or refused to perform" any duty.

The Court also finds that Petitioners have an alternate remedy at law with regard to preventing the usurpation of the "Libertarian" title by other parties. Petitioners complained at oral argument that unless the LPD is recognized as the official political party bearing the "Libertarian" title, other unaffiliated factions may attempt to usurp the "Libertarian" title, thus confusing voters as well as State Election authorities and resulting in possible loss of votes and delays in the recognition of the LPD's nominated candidates. The Court finds that such a possibility was contemplated by the Delaware legislature and that 15 *Del. C.* § 3302 provides an adequate remedy. Specifically, Section 3302(a) provides that "[t]he same title, figure or device shall not be used by more than 1 party, and the party first certifying a name, title, figure or device to the Department shall have prior right to use the same." If the LPD was indeed the first to certify that name, it already has "prior right to use the same," and has no need to seek the writ of mandamus petitioned for here. Section 3302(b) provides additional protection if some other faction attempts to nominate a candidate using the LPD's name or title. Because there exists an adequate remedy at law, the Court finds that Petitioners are not entitled to the relief sought under any reasonably conceivable set of circumstances susceptible of proof. Finally, because independent grounds for dismissal are demonstrated, it is unnecessary to reach Respondent's argument that Petitioners lack standing.

## IV. CONCLUSION

**WHEREFORE**, Respondent's motion to dismiss is **GRANTED** and Petitioners' motion for summary judgment is **DENIED** as moot.

/s/Noel Eason Primos
Noel Eason Primos, Judge

NEP/wjs
*Via File & ServeXpress and U.S. Mail*
oc:    Prothonotary
xc:    Nadine Frost
       Sean Goward
       William McVay
       Attorneys of Record